# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CAREPATROL  FRANCHISE
SYSTEMS, LLC,

     Plaintiff,

v.

SUSTAINED CARE SERVICES, LLC,
AGING HAPPENS, and HERCULES
BOTHMA,

     Defendants.

Case No. 2:24-cv-11755

Honorable

---

Ari M. Charlip (P57285)
Dalia Abdow (P83657)
Gordon Rees Scully Mansukhani LLP
Attorneys for Plaintiff
37000 Woodward Ave., Ste. 225
Bloomfield Hills, MI 48304
(313) 765-6434
acharlip@grsm.com
dabdow@grsm.com

---

## <u>VERIFIED COMPLAINT</u>

NOW COMES Plaintiff CarePatrol Franchise Systems, LLC ("CarePatrol"), through its counsel, and states as follows for its Verified Complaint against Defendants Sustained Care Services, LLC ("SCS"), Aging Happens ("AH") and Hercules Bothma ("Bothma") (collectively "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff CarePatrol is a Delaware limited liability company with its principal place of business located at 900 Wilshire Dr., Suite 103, Troy, MI 48084.

2. Defendant SCS is a Pennsylvania limited liability company with its registered address at 7 Forrest Lane, Springfield, PA 19064.

3. SCS was rebranded to AH, which is a fictitious name and entity owned by SCS and Defendant Bothma.

4. Defendant Bothma is a Pennsylvania resident living in or around Springfield, Pennsylvania.

5. This Court has personal jurisdiction over Defendants pursuant to Paragraph 23.3 of the parties' Franchise Agreement, in which Defendants agreed and irrevocably submitted to this Court's jurisdiction and venue.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

7. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(3).

8. Pursuant to the Franchise Agreement, the parties agreed that the Franchise Agreement and franchise relationship shall be governed by Arizona law. (See Franchise Agreement at § 25.1).

## Common Allegations

### CarePatrol's System & Services

9.     CarePatrol is a franchisor and is in the business of providing senior care placement services throughout the United States, via a network of carefully vetted and approved franchisees.

10.     To this end, CarePatrol has acquired and developed a unique management and business methodology for providing such services, which CarePatrol has branded as its "CarePatrol Services" (hereinafter referred to as the "Services").

11.     In order to provide the Services, CarePatrol has developed and maintained certain confidential information, trade secrets, formats, concepts designs, systems, methods, specifications, standards and procedures, marketing programs, proprietary programs and productions, confidential brand standards, manual and operating system, as well as other intellectual property rights such as trademarks, services marks, logos and other commercial symbols, paperwork, and forms (together with the Services, collectively referred to as the "System").

12.     CarePatrol has streamlined the System into a licensable business operation and will franchise the same through individuals and entities that are qualified and approved by CarePatrol and subject to the agreed upon terms and conditions with the franchisees, as set forth below. CarePatrol, as the franchisor,

offers support, training, and a license to utilize its system to approved CarePatrol franchisees.

13.    As qualified franchisees, the approved entities and individuals own and operate a business in specified/select and limited locations to offer Services and otherwise benefit from the use of CarePatrol's successful and proprietary System.

14.    In exchange for the use of System and license to offer CarePatrol's Services, the franchisees pay to CarePatrol certain fees, abide by the terms and conditions of that certain dedicated franchise agreement, and agree to abide by certain post-term covenants as further specified hereinafter and per the certain dedicate franchise agreement.

The Franchise Agreement

15.    On or around April 22, 2019, Defendants agreed to and signed the CarePatrol Franchise Agreement for CarePatrol Services for a term of five (5) years, with the term set to expire on April 22, 2024 (the "Franchise Agreement"; see **Exhibit A[1]**).

16.    Pursuant to the Franchise Agreement, CarePatrol granted Defendants the exclusive right to own and operate a CarePatrol business for a period of five

---

[1]  The Franchise Agreement is redacted for confidential and proprietary purposes. CarePatrol will provide, upon request, an unredacted Franchise Agreement. Additionally, the Franchise Agreement was also executed by non-party Michaela Kulbartz.

years within a select location in Pennsylvania and is more specifically identified in Exhibit A to the Franchise Agreement.

17.     In granting Defendants the exclusive license/right to operate in the area, CarePatrol agreed to not pursue or otherwise seek or permit other franchise/ franchisees to operate in the same dedicated region as identified in the Franchise Agreement. (Franchise Agreement at § 2.3).

18.     In exchange for the use of CarePatrol's System, Intellectual Property[2], Marks[3], Know-how[4], and the exclusive right to offer CarePatrol's Services in the particular region, Defendants agreed to utilize the foregoing only in connection with the operation of the franchised business during the Term of the Franchise Agreement. (Franchise Agreement at §§ 18.1 – 18.7).

19.     The Franchise Agreement provides certain brand protection covenants that prevent Defendants from utilizing CarePatrol's Intellectual Property, Know-

---

[2] The Franchise Agreement defines Intellectual Property as, collectively or individually, CarePatrol's "Marks, Copyrights, Know-how, System, Improvements and Business Records." (Franchise Agreement at § 18.2).

[3] The Franchise Agreement defines Marks as "logotypes, service marks, and trademarks now or hereafter involved in the operation of a CarePatrol business, including "CarePatrol" and any other trademarks, service marks or trade names that we designate for use in a CarePatrol business." (Franchise Agreement at § 18.2).

[4] The Franchise Agreement defines Know-how as "all of [CarePatrol's] trade secrets and other proprietary information relating to the development, construction, marketing and/or operation of a CarePatrol business, including but not limited to, methods, techniques, specifications, procedures, policies, marketing strategies and information comprising the System and the Manual." (Franchise Agreement at § 18.2).

how, System, and other proprietary and confidential documents and information received during the Franchise Agreement's Term outside of the operation of the franchised business. (Franchise Agreement at §§ 15, 18, and 22).

20.     Specifically, the Franchise Agreement provides that CarePatrol is "the sole and exclusive owner of the Intellectual Property and the goodwill associated with the Marks," that the use of CarePatrol's Intellectual Property is derived solely from the Franchise Agreement, and that use of the Intellectual Property is limited to a license granted by CarePatrol during the term of the Franchise Agreement. (See Franchise Agreement at § 18.1).

21.     Further, in the event of the Franchise Agreement's termination, expiration, or transfer of the Agreement, Defendants are obligated to certain post-term requirements, including, among other things, the cessation of the use of CarePatrol's Intellectual Property and Know-how, returning all materials and forms bearing CarePatrol's Marks, Copyrights, and other identification, and complying with all post-term covenants described in Section 22 of the Franchise Agreement. (See Franchise Agreement at §§ 15, 18, and 22; Franchise Agreement at Attachment B, § 3(a)).

22.     In addition to the post-term covenants described above, the covenants in Section 15.4 of the Franchise Agreement prohibit Defendants from competing with CarePatrol upon the expiration of the Franchise Agreement for a period of one

(1) year and within Defendants' territory or any territory operated by CarePatrol or another CarePatrol franchisee as of the start of the one (1) year period, as set forth in the Franchise Agreement. (See Franchise Agreement at § 15.4; Franchise Agreement at Attachment B, § 3(c); Franchise Agreement at Attachment D).

23.     Notwithstanding their obligations as described above, and as more fully set forth in the Franchise Agreement, Defendants breached the Franchise Agreement by, among other things, operating a competitive business in violation of the restrictive covenants of the Franchise Agreement and the Franchise Owner Agreement attached as Attachment B to the Franchise Agreement (the "Franchise Owner Agreement").

24.     CarePatrol discovered Defendants' breaching conduct on several online web pages, including but not limited Defendants' web page [www.aginghappens.com](www.aginghappens.com), which improperly advertises the operation of AH within the Restricted Territory and in violation of the Franchise Agreement. (See **Exhibit B**).

25.     After CarePatrol discovered Defendants' operation of a Competitive Business through their online presence, an internal review by CarePatrol of Defendants' CarePatrol issued email revealed Defendants' premediated intent to operate a Competitive Business. Specifically, Defendants' email correspondence dated April 16, 2024, revealed that Defendants (i) stated that notwithstanding the

Franchise Agreement's expiration, they intend to provide senior care placement services within the Restricted Territory as an independent contractor; (ii) provided AH's contact information for future correspondence in the operation of AH; and (iii) inquired into senior placement software to utilize in the operation of AH. (See **Exhibit C**).

26.     A search of Pennsylvania's Department of State records revealed SCS and AH's active status as of July 2024, with AH operating under a fictitious name and SCS as owner of AH. (See **Exhibit D**).

27.     Pursuant to Section 15.4 of the Franchise Agreement and the Franchise Owner Agreement, Defendants' continued operation of a Competitive Business constitutes a default under each of the Agreements.

28.     CarePatrol's discovery of Defendants' continued operation of SCS and AH also prompted CarePatrol to review Defendants' download history of CarePatrol's Intellectual Property.

29.     The search revealed that on April 26, 2024, without permission or authority and approximately four (4) days *after* the expiration of the Franchise Agreement, Defendants **downloaded over two thousand (2,000) documents containing thousands of pages of CarePatrol's Intellectual Property, Know-how, forms, and other confidential, proprietary, and trade secret information and materials**, as set forth in greater detail below.

30.     Given that Defendants have never performed a mass download of CarePatrol's Intellectual Property prior to this instance during their five (5) years as a CarePatrol franchisee and that Defendants performed the unauthorized mass download after the expiration of the Franchise Agreement's term, it is clear Defendants had no other reason to do so in this instance but to steal CarePatrol's Intellectual Property before their access was cut-off in order to utilize CarePatrol's Intellectual Property in the operation of their Competitive Business.

<u>Covenant Not to Compete</u>

31.     Pursuant to Section 15.4 of the Franchise Agreement, Defendants agreed not to compete with CarePatrol upon the expiration of the Franchise Agreement for a period of one (1) year (the "Post-Term Restricted Period").

32.     The Franchise Agreement provides, in pertinent part, "[d]uring the Post-Term Restricted Period, you and your Owners agree not to engage in any Prohibited Activities." (Franchise Agreement at § 15.4).

33.     The term "Prohibited Activities" is defined as:

> (i) owning, operating, or having any other interest (as an owner, partner, director, officer, employee, manager, consultant, shareholder, creditor, representative, agent or in any similar capacity) in any Competitive Business [ . . .]
>
> (ii) diverting or attempting to divert any business from us (or one of our affiliates or franchisees).

(Franchise Agreement § 15.3; Franchise Owner Agreement at § 1).

9

34.    The Franchise Agreement goes on to state that "you and your Owners may have an interest in a Competitive Business during the Post-Term Restricted Period as long as the Competitive Business is not located within, and does not provide competitive goods or services to clients who are located within the Restricted Territory." (Franchise Agreement at § 15.4.)

35.    The Franchise Agreement defines a "Competitive Business" as "any business that provides senior referral and placement services similar to or competitive with the services offered by CarePatrol businesses as well as any form of ownership in a senior care facility or home care agency without our express written approval." (*Id.* at § 15.3).

36.    The "Restricted Territory" is defined as "the geographic area within (i) your Territory; and (ii) any territory operated by [CarePatrol] or another CarePatrol franchisee as of the beginning of the Post-Term Restricted Period." (*Id.*). Defendants' geographic territory is defined in Attachment A to the Franchise Agreement.

37.    The Franchise Agreement also states that Defendants "acknowledge and agree that (i) the terms of this Agreement are reasonable both in time and in scope of the geographic area; (ii) our use and enforcement of covenants similar to those described above with respect to other CarePatrol franchisees benefits you and the Owners in that it prevents others from unfairly competing with your Business;

10

and (iii) you and the Owners have resources and business experience and opportunities to earn an adequate living while complying with the terms of the Agreement. **YOU HEREBY WAIVE ANY RIGHT TO CHALLENGE THE TERMS OF THIS <u>SECTION 15</u> AS BEING OVERLY BROAD, UNREASONABLE, OR OTHERWISE ENFORCEABLE.**" (*Id.* at § 15.7).

38.    Notwithstanding Defendants' contractual obligations, Defendants are continuing to operate SCS and/or are operating SCS under the rebranded entity AH and utilizing the same phone number they used while operating as a CarePatrol franchisee, as indicated by Defendants' email, Defendants' AH website, LinkedIn, phone number, and other web pages, which demonstrate Defendants have already began marketing their new business. (See **<u>Exhibit E;</u>** Exs. B and C).

39.    Because AH is a continuation of SCS under a separate name, AH is bound by the Franchise Agreement as if it were a named party therein.

40.    Defendants agreed that any breach of Franchise Agreement and Franchise Owner Agreement following the expiration of the Franchise Agreement would threaten immediate and substantial irreparable injury to CarePatrol and would give CarePatrol the right to obtain immediate and permanent injunctive relief. (Franchise Agreement at §§ 15.8 and 23.3; Franchise Owner Agreement at § 3(f)).

41.    The Franchise Agreement and Franchise Owner Agreement provide that in the event CarePatrol is required to file suit against Defendants for breaching

either Agreement, that Defendants agree to pay undersigned counsel for attorney's fees and costs associated therewith. (Franchise Agreement at § 24; Franchise Owner Agreement at § 7). As a result, Defendants are liable to CarePatrol for costs and fees incurred by CarePatrol in this action.

42.     Defendants' brazen disregard of their bargained-for contractual obligations, without consequence, renders the non-compete clause meaningless and sets a precedent for other franchisees to follow in Defendants' footsteps without consequence as Defendants suggested.

43.     Therefore, as a result of Defendants' continuing breaches of the Franchise Agreement and Franchise Owner Agreement, CarePatrol has and will continue to suffer damages, including but not limited to, loss of good will and loss of reputation.

Use of CarePatrol's Intellectual Property

44.      As set forth in the Franchise Agreement and Franchise Owner Agreement, Defendants' use of the Intellectual Property, Know-how, Manual, and System, **was derived solely from the Franchise Agreement and is a limited licensed granted by CarePatrol to operate the Business during the Term.** (See Franchise Agreement at §§ 15.2 and 18.1; Franchise Owner Agreement at § 3(a)).

45.     Further, the Franchise Agreement and Franchise Owner Agreement prohibit Defendants from utilizing any Intellectual Property or Know-how in any

12

business or capacity or for any purpose other than the operation of a CarePatrol business and **from making unauthorized copies of documents containing any Know-how**. (See Franchise Agreement at §§ 15.2, 18, and 22(a); Franchise Owner Agreement at § 7).

46.     Additionally, the Agreements require Defendants to maintain the confidentiality of the Intellectual Property and Know-how, **to not make unauthorized copies of documents containing Intellectual Property and Know-how, to stop using the Intellectual Property and Know-how immediately upon the Franchise Agreement's expiration, and to return all copies of the Manual, as well as all brochures, advertising and promotional materials, forms, and any other materials relating to a CarePatrol business**. (See Franchise Agreement at §§ 15.2, 18, 22(a), and 22(d); Franchise Owner Agreement at § 7).

47.     Notwithstanding their contractual obligations above and approximately four (4) days *after* the expiration of the Term, CarePatrol's internal data and software revealed that **Defendants made unauthorized downloads of over two thousand (2,000) documents containing thousands of pages of CarePatrol's Intellectual Property, including but not limited to, customer lists, customer data, marketing and business development data, numerous template agreements, template questionnaires, marketing templates, template correspondence, best practices and tips, client consent forms, client welcome letters, hundreds of guides,**

**provider and vendor contacts and information, brochures, processes and procedures, and other proprietary and confidential documents, information, and trade secrets.**

48.     Defendants' extensive download activity is set forth in the attached excel sheet generated by CarePatrol's internal software, attached hereto as **Exhibit F[5]**.

49.     Although Defendants were aware that their license to utilize CarePatrol's Intellectual Property was limited to the term of the Franchise Agreement, Defendants' unauthorized, wide-scale, and extensive collection of CarePatrol's Intellectual Property days *after* the expiration of the Franchise Agreement demonstrates **Defendants' willful and malicious attempt and intent to misappropriate CarePatrol's Intellectual Property and goodwill in the operation of a Competitive Business.**

50.     Because Defendants' unauthorized collection of CarePatrol's Intellectual Property occurred after the Franchise Agreement's expiration, it is clear Defendants had no other reason to do so in this instance but to steal CarePatrol's Intellectual Property in order to utilize it in the operation of Defendants' Competitive Business.

---

[5] Exhibit F contains trade secrets entitled to protection from disclosure and shall be filed under seal in accordance with the procedures set forth in Local Rule 5.3(a).

51.     Moreover, and based upon Defendants' continued operation of a Competitive Business, Defendants have and/or intend to migrate CarePatrol's Intellectual Property for the operation of a Competitive Business.

52.     CarePatrol has expended considerable time, effort, skill, resources, and money over several years to develop, update, and maintain the Intellectual Property, along with its confidentiality, which Defendants purport to misappropriate for their own benefit and competitive advantage.

## Count I – Breach of Franchise Agreement
### (against all Defendants)

53.     CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

54.     The Franchise Agreement is a valid and enforceable agreement.

55.     CarePatrol performed all of its obligations to Defendants under the Franchise Agreement.

56.     The Franchise Agreement prohibits Defendants from "owning, operating, or having any other interest" in any "Competitive Business" for a period of one (1) year within the Restricted Territory following the expiration of the Franchise Agreement's Term. (Franchise Agreement §§ 15.3 and 15.4).

57.     SCS and AH are each a "Competitive Business" that provides senior referral and placement services.

58.     Defendants have breached their obligations to CarePatrol under the Franchise Agreement by continuing to operate a business that provides similar or identical services that Defendants provided as a franchisee of CarePatrol in contravention of the Franchise Agreement's covenant not to compete, as Defendants have not waited one (1) year from the expiration of the Franchise Agreement to engage in a Competitive Business. (*Id.*).

59.     Defendants have further breached their obligations to CarePatrol under the Franchise Agreement by operating a Competitive Business within the geographic area in which Defendants are prohibited from engaging in or operating a Competitive Business.

60.     Additionally, Defendants have breached the Franchise Agreement by collecting CarePatrol's Intellectual Property, Know-how, trade secrets, and other confidential and proprietary information and documents without authorization and with a clear intent to utilize the Intellectual Property and Know-how in the operation of their Competitive Business.

61.     Defendants performed a mass collection of CarePatrol's Intellectual Property and Know-how after the expiration of the Term knowing that they were prohibited from using them and making unauthorized copies after the Franchise Agreement's expiration.

62.     By competing against CarePatrol using CarePatrol's Intellectual Property, Defendants are misappropriating CarePatrol's Intellectual Property in violation of the Franchise Agreement.

63.     Additionally, Section 23.3 of the Franchise Agreement provides that Defendants agreed to pay all costs and expenses, including attorneys' fees, in connection with the enforcement of the Franchise Agreement. (Franchise Agreement § 23.3).

64.     As a direct and proximate result of Defendants' breaches of the Franchise Agreement as described herein, CarePatrol has suffered and will continue to suffer damages in excess of $75,000.

65.     CarePatrol will also suffer irreparable harm over and above any monetary damages if Defendants are not prohibited from operating a Competitive Business and misappropriating CarePatrol's Intellectual Property, trade secrets, and other confidential and proprietary information and documents.

**Count II – Breach of Franchise Owner Agreement**
**(against all Defendants)**

66.     CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

67.     At the time Defendants entered into the Franchise Agreement, they executed the Franchise Owner Agreement, conferring personal liability upon

Defendant Bothma for any breaches of the Franchise Agreement by Defendants. (Franchise Owner Agreement at § 5).

68. The Franchise Owner Agreement is a valid and enforceable agreement between CarePatrol and Defendant Bothma.

69. Pursuant to the Franchise Owner Agreement, Bothma personally guaranteed and assured the full and complete performance of the Defendants under the Franchise Agreement, which included the noncompetition agreement and the post-termination obligations.

70. Defendant Bothma breached the Franchise Owner Agreement by failing to ensure the full and complete performance of the Defendants under the Franchise Agreement or otherwise causing Defendants to breach their obligations under the Franchise Agreement.

71. In addition to the failure to ensure full and complete performance of the Franchise Agreement, Defendant Bothma breached the Franchise Owner Agreement's non-competition and Intellectual Property prohibitions.

72. Specifically, the Franchise Owner Agreement prohibits Bothma from owning, operating, or having any other interest in a Competitive Business for a period of one (1) year within the Restricted Territory following the expiration of the Franchise Agreement's Term. (Franchise Owner Agreement at § 3(c)).

73. Further, and with respect to CarePatrol's Intellectual Property, Defendants agreed they (i) will not use the Know-how in any business or capacity other than the CarePatrol business operated by Defendants; (ii) will maintain the confidentiality of the Know-how at all times; (iii) will not make unauthorized copies of documents containing any Know-how; (iv) will take such reasonable steps to prevent unauthorized use or disclosure of the Know-how; (v) will stop using the Know-how immediately upon the termination or expiration of the Franchise's Term; and (vi) will not use the Intellectual Property for any purpose other than the development and operation of Defendants' CarePatrol business. (Franchise Owner Agreement at § 3(a)).

74. As set forth herein, Defendants have breached their obligations to CarePatrol under the Franchise Owner Agreement by continuing to operate a Competitive Business in breach of the Franchise Owner Agreement's covenant not to compete. (*Id.*).

75. Defendants have further breached their obligations to CarePatrol under the Franchise Owner Agreement by making unauthorized copies/downloads of CarePatrol's Intellectual Property and by failing cease use of CarePatrol's Intellectual Property following the expiration of the Term.

76. Further, Defendant Bothma agreed to pay all reasonable attorney's fees and all costs and other expenses incurred in any collection or attempted collection

of amounts due pursuant to the Franchise Agreement or in enforcing the Franchise Owner Agreement against him. (Franchise Owner Agreement at § 7).

77. As a direct and proximate result of Defendants' breaches of the Franchise Agreement and Franchise Owner as described herein, CarePatrol has suffered and will continue to suffer damages in excess of $75,000.

78. CarePatrol will also suffer irreparable harm over and above any monetary damages if Defendants are not prohibited from operating a Competitive Business and misappropriating CarePatrol's Intellectual Property, trade secrets, and other confidential and proprietary information and documents.

## Count III – Misappropriation of Trade Secrets under the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401, et seq.
### (against all Defendants)

79. Among other things, CarePatrol's System, Intellectual Property, and Know-how, including confidential customer information, forms, paperwork, marketing tactics and materials, formats, designs, systems, methods, specifications, standards and procedures, forms, and paperwork, as well as other intellectual property rights such as trademarks, services marks, logos and other commercial symbols qualify as confidential information and trade secrets.

80. Defendants acquired knowledge of information of CarePatrol that constitutes a "trade secret" under the Arizona Uniform Trade Secrets Act ("AUTSA"), as that information (a) derives independent economic value from not

being generally known to, and not readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

81. At all times, CarePatrol has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of the proprietary information, including obligating franchisees to maintain the secrecy of the information through confidentiality provisions in their Franchise Agreements, requiring franchisees execute a confidentiality agreement with their employees to maintain the confidentiality of proprietary information received during employment, maintaining care with any documents and also demanding the return of such information upon the termination of any franchises.

82. This confidential information and trade secrets are not known to CarePatrol's competitors or others outside of the CarePatrol franchise system.

83. Defendants knew that CarePatrol considered and treated the information entrusted to them as confidential and secret.

84. Defendants wrongfully obtained CarePatrol's trade secrets without permission and in violation of Defendants' duties to maintain the secrecy of such information.

85. These trade secrets have given SCS and AH, and their principal, Defendant Bothma, an opportunity to gain an advantage over competitors.

86. Defendants' conduct constitutes misappropriation of trade secrets pursuant to the AUTSA.

87. At the time of such improper misappropriation of CarePatrol's trade secrets and other confidential and proprietary information, Defendants knew or had reason to know that their knowledge was acquired under circumstances giving rise to a duty to maintain the secrecy of the information.

88. Defendants' misappropriation of CarePatrol's trade secrets was willful and malicious as it occurred after Defendants' Term and without permission.

89. As a direct and proximate result of Defendants' malicious misappropriation, CarePatrol has sustained and continues to sustain irreparable harm and is entitled to recovery of the damages requested, including attorney fees.

### Count IV – Injunctive Relief
### (against all Defendants)

90. CarePatrol incorporates by reference the preceding allegations as if fully restated herein.

91. Defendants' actions in attempting to operate a Competitive Business under a rebranded entity is a violation of the Franchise Agreement and Franchise Owner Agreement's covenants not to compete.

92. Additionally, Defendants' actions in (i) collecting CarePatrol's Intellectual Property, Know-how, confidential information, and trade secrets after the Franchise Agreement's Term and without permission; and (ii) utilizing and/or

intending to utilize disclose, and/or misappropriate CarePatrol's Intellectual Property, Know-how, confidential information, and trade secrets to operate the Competitive Business is a violation of the Franchise Agreement and Franchise Owner Agreement.

93. Given Defendants' continued operation of a Competitive Business and action to rebrand SCS into AH in breach of the Franchise Agreement and Franchise Owner Agreement, there is a substantial likelihood that CarePatrol will succeed on the merits.

94. CarePatrol stands to suffer immediate and irreparable harm if Defendants are allowed to operate a Competitive Business and utilize, disclose, and/or misappropriate CarePatrol's Intellectual Property, Know-how, confidential information, and trade secrets, including but not limited to loss of reputation and loss of goodwill.

95. CarePatrol's franchise model is based upon, among other things, its highly developed System, including its Intellectual Property, trade secrets, and confidential and proprietary information.

96. Defendants' use and/or disclosure of CarePatrol's System, Intellectual Property, and trade secrets could completely undermine the competitive advantage on which CarePatrol's franchise model is based and has worked to establish.

97. Defendants' violation of the post-term and non-compete provisions in the Franchise Agreement and Franchise Owner Agreement is willful and deliberate and in total disregard their contractual obligations.

98. The irreparable harm to CarePatrol is immediate, irreparable, and cannot be adequately compensated by damages. In contrast, the grant of injunctive relief sought by CarePatrol would only compel Defendants to live up to their contractual commitments.

99. Failing to hold Defendants to the terms of the Franchise Agreement would be contrary to the public policy of the enforcement of contractual agreements.

100. Further, CarePatrol franchisees are provided the System, Intellectual Property, Know-how, and other resources which enable franchisees to establish their own businesses. If franchisors are unable to protect their systems, intellectual property, and benefits provided to franchisees during the term, the nature of the franchise model would crumble to the detriment of the public.

101. Further, Defendants specifically agreed to the injunctive relief in the Franchise Agreement. (Franchise Agreement at §§ 15.8 and 23.3).

WHEREFORE, CarePatrol respectfully requests that this Court (i) enter judgment in favor of CarePatrol and against Defendants in an amount to be determined, together with interest, attorney's fees, and costs; (ii) enter an order enjoining and prohibiting Defendants from operating any "Competitive Business"

as that term is defined and used in the Franchise Agreement and Franchise Owner Agreement consistent with the respective covenants not to compete; (iii) enter an order enjoining and prohibiting Defendants from utilizing, disclosing, and/or misappropriating CarePatrol's Intellectual Property, Know-how, trade secrets, confidential and proprietary information and documents and requiring that Defendants destroy and/or return all CarePatrol's Intellectual Property in their possession to be completed by a third party expert at Defendants' cost and provide adequate assurances to CarePatrol of the same; and (iv) enter an order granting CarePatrol any such additional relief as this Court deems just and equitable.

Respectfully submitted,

/s/ *Ari M. Charlip*
Ari M. Charlip (P57285)
Dalia Abdow (P83657)
Gordon Rees Scully Mansukhani LLP
Attorneys for Plaintiff
37000 Woodward Ave., Ste. 225
Bloomfield Hills, MI 48304
(313) 765-6434
acharlip@grsm.com
dabdow@grsm.com

Dated: July 8, 2024

## VERIFICATION

I, Kathleen Ogilvy, declare as follows:

1. I am the Associate Counsel of CarePatrol Franchise Systems, LLC, the plaintiff in the above styled action.

2. I have personal knowledge of CarePatrol and its activities, including those set forth in the foregoing Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. I verify under the penalty of perjury that the factual statements in this Verified Complaint are true and correct.


Dated: July 8, 2024

_____
Kathleen Ogilvy